## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

XAVIER PEREZ,

     Petitioner,

v.                                    Case No. 8:17-cv-311-MSS-UAM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## O R D E R

Perez petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for lewd and lascivious battery and lewd and lascivious molestation (Doc. 32), the Respondent asserts that the amended petition is untimely (Docs. 35 and 45), and Perez replies that his amended petition is timely, the limitation period equitably tolled, and actual innocence excuses the time bar. (Docs. 39 and 46) After reviewing the pleadings and the relevant state court record (Docs. 36-2 and 44-2), the Court **DISMISSES** the petition as time barred.

### PROCEDURAL HISTORY

A jury found Perez guilty of four counts of lewd and lascivious battery on a minor and one count of lewd and lascivious molestation of a minor, and the trial court imposed an aggregate sentence of seventy-five years in prison. (Doc. 36-2 at 604–14) Perez appealed, and the state appellate court affirmed. (Doc. 44-2 at 9)

Perez filed a petition alleging ineffective assistance of appellate counsel (Doc. 36-2 at 654–703), and the state appellate court denied the petition. (Doc. 44-2 at 20) Perez moved for

post-conviction relief (Doc. 44-2 at 38–93), the post-conviction court denied relief (Doc. 44-2 at 94–101), and the state appellate court affirmed. (Doc. 44-2 at 350)

Perez's federal petition followed. In his federal petition, Perez asserts that (1) the trial court violated his federal right to due process by denying his request for a special jury instruction defining "lewd and lascivious," (2) the trial court violated his federal right to due process by entering a judgment for the conviction of a crime not charged in the information, and (3) the trial court violated his federal right to due process by denying his motion for a judgment of acquittal. (Doc. 32 at 8–17)

## ANALYSIS

A one-year statute of limitations applies to a federal habeas petition challenging a state court judgment. 28 U.S.C. § 2244(d)(1). The limitation period begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

On July 1, 2015, the state appellate court affirmed Perez's convictions and sentences in a decision without a written opinion (Doc. 44-2 at 9), the state supreme court lacked jurisdiction to review the unelaborated decision, and Perez could have sought further review only in the United States Supreme Court. *Bates v. Sec'y, Fla. Dep't Corrs.*, 964 F.3d 1326, 1329 (11th Cir. 2020) (citing *Jackson v. State*, 926 So. 2d 1262, 1265 (Fla. 2006)). Perez did not seek further review in the United States Supreme Court, and under Rule 13(1) and (3), Rules of the Supreme Court of the United States, the time to seek review is determined as follows:

> Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within ninety days after entry of the judgment. A petition

for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within ninety days after entry of the order denying discretionary review.

. . .

The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice). But if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or *sua sponte* considers rehearing, the time to file the petition for a writ of certiorari for all parties (whether or not they requested rehearing or joined in the petition for rehearing) runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment.

Perez asserts that the time to seek review in the United States Supreme Court tolled because he filed a timely motion for rehearing after the state appellate court's decision. (Doc. 46 at 4) The state appellate court's decision entered on July 1, 2015 (Doc. 44-2 at 9), Rule 9.330(a)(1), Florida Rules of Appellate Procedure, authorized Perez to file a motion for rehearing fifteen days later — July 16, 2015, and Perez admits that he filed the motion on July 20, 2015[1]. (Docs. 39 at 2 and 46 at 1) Consequently, the untimely motion did not toll the time to seek review in the United States Supreme Court. Also, the state appellate court struck the motion for rehearing (Doc. 44-2 at 14), citing *Benjamin v. State*, 32 So. 3d 131, 132 (Fla. 2d DCA 2009), which requires "strik[ing] [ ] *pro se* motions [for rehearing] as unauthorized in all cases in which the defendant is represented by counsel who has filed a brief on the merits." Because appellate counsel filed a brief for Perez on appeal (Doc. 36-2 at 616–52), the state

---

[1] Because the record does not contain a copy of the motion for rehearing, the Court cannot determine whether the prison mailbox rule applies. *Haag v. State*, 591 So. 2d 614, 617 (Fla. 1992).

appellate court treated his *pro se* motion for rehearing as a "nullity." *Riguiero v. State*, 23 So. 3d 127, 128 (Fla. 4th DCA 2009) ("*[P]ro se* filings are a 'nullity' when filed by a party that is represented by counsel.") (citing *Logan v. State*, 846 So. 2d 472, 475–76 (Fla. 2003)).

Because the untimely and unauthorized motion for rehearing did not toll the time to seek review in the United States Supreme Court, the time to seek review expired ninety days after the state appellate court's decision — September 29, 2015. Sup. Ct. R. 13(1). The federal limitation period started to run the next day. Fed. R. Civ. P. 6(a)(1)(A).

"[A] properly filed application for State post-conviction or other collateral review" tolls the limitation period. 28 U.S.C. § 2244(d)(2). The limitation period ran for twenty-nine days until October 29, 2015, when Perez placed in the hands of prison officials for mailing his petition alleging ineffective assistance of appellate counsel. (Doc. 36-2 at 654–703) On December 16, 2015, the state appellate court denied the petition (Doc. 44-2 at 20), and the limitation period continued to toll until fifteen days later when the time to file a motion for rehearing expired — December 31, 2015. Fla. R. App. P. 9.330(a)(1). *Nix v. Sec'y, Dep't Corrs.*, 393 F.3d 1235, 1237 (11th Cir. 2004).

The limitation period ran for 336 days and expired on December 2, 2016. On August 4, 2017, Perez placed in the hands of prison officials for mailing a state court motion for post-conviction relief. (Doc. 44-2 at 2, 239–58) Because Perez filed the post-conviction motion after the limitation period expired, the motion did not toll the limitation period. *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("[O]nce a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it."). On

February 6, 2017, Perez placed in the hands of prison officials for mailing his Section 2254 petition. (Doc. 1) Consequently, his Section 2254 petition is untimely.[2]

### Mandate in Ineffective Assistance of Appellate Counsel Proceeding

Perez contends that the state appellate court never issued a mandate in the ineffective assistance of appellate counsel proceeding. (Doc. 46 at 5) He asserts that, because the limitation period resumes only after the state appellate court issues a mandate, the running of limitation period never resumed. (Doc. 46 at 5–6)

Perez is correct that the state appellate court did not issue a mandate after denying Perez's petition alleging ineffective assistance of appellate counsel. (Doc. 44-2 at 18) However, "[t]he mandate is 'the official mode of communicating the judgment of the appellate court to the lower court, directing the action to be taken or the disposition to be made of the cause by the trial court.'" *Ketcher v. Ketcher*, 198 So. 3d 1061, 1063 (Fla. 1st DCA 2016) (citation omitted). In an ineffective assistance of appellate counsel proceeding, the state appellate court does not review a ruling or a judgment by the trial court. The state appellate court reviews the extraordinary writ petition for the first time in an original proceeding. Fla. R. App. P. 9.141(d)(2) (citing Fla. R. App. P. 9.100).

---

[2] Even if his motion for rehearing on direct appeal tolled the time to seek review in the United States Supreme Court, his Section 2254 petition is untimely. On July 22, 2015, the state appellate court struck the motion as unauthorized (Doc. 44-2 at 14), and the time to seek review would expire ninety days later — October 20, 2015. Eight days would run on the limitation period until October 29, 2015, when Perez filed his petition alleging ineffective assistance of appellate counsel. (Doc. 36-2 at 654–703) The limitation period would toll until December 31, 2015, when the time to file a motion to rehear the order denying the petition expired. *Nix*, 393 F.3d at 1237. The limitation period would run for 357 days and would expire on December 23, 2016. Consequently, his Section 2254 petition filed on February 6, 2017, would be untimely. (Doc. 1)

Consequently, a mandate does not issue in an ineffective assistance of appellate counsel proceeding, and the limitation period under Section 2244(d)(2) continues to toll until the state appellate court denies a motion for rehearing or the time to seek rehearing expires. *Moore v. Sec'y, Fla. Dep't Corrs.*, 762 Fed. App'x 610, 620 (11th Cir. 2019)[3] ("[A]n unappealed state habeas petition initially filed in a Florida intermediate appellate court remains pending for AEDPA purposes until the intermediate appellate court denies a rehearing, if one is requested.") (citing *Lawrence v. Florida*, 549 U.S. 327, 332 (2007)). As explained above, on December 16, 2015, the state appellate court denied the petition (Doc. 44-2 at 20), and the limitation period continued to toll until fifteen days later when the time to file a motion for rehearing expired. Fla. R. App. P. 9.330(a)(1). *Nix*, 393 F.3d at 1237.

**Equitable Tolling**

Perez asserts that the limitation period equitably tolled because he diligently pursued his rights in state court and federal court, he was seventy-two when the limitation period expired, and he suffers from hearing loss and a broken hand that limits his ability to write and type. (Doc. 46 at 6–10) He further contends that he did not timely seek relief because he was a *pro se* litigant who lacked sufficient legal knowledge. (Doc. 39 at 4)

Equitable tolling applies to a Section 2254 petition and requires the petitioner to demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

---

[3] 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

"Equitable tolling is an extraordinary remedy which is typically applied sparingly." *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000).

On December 28, 2015, eleven days after the state appellate court denied his petition alleging ineffective assistance of appellate counsel, Perez placed in the hands of prison officials for mailing a letter requesting records from the state court clerk[4]:

> I need to establish a lawsuit, demand against the State, for which I need all the records in the following cases: 11-CF-36620, 13-CF-494200, 12-CF-896300, 15-DR-2099.
>
> If possible, the records of the District Court of Appeal in the following cases: 2D14-2508, 2D15-4814.
>
> Thank you for your time. I am indigent.

Perez contends that this correspondence demonstrates that he acted diligently before filing his federal petition. (Doc. 46 at 8–9) However, Perez requested the records from the state court clerk 339 days before the limitation period expired. The limitation period expired on December 2, 2016, and Perez waited an additional two months before filing his initial federal petition on February 6, 2017. (Doc. 1) Perez attached to his initial federal petition his petition alleging ineffective assistance of appellate counsel (Doc. 1-1) and two civil complaints that he filed in state court. (Docs. 1-2 and 1-3) Perez does not explain why he needed those documents to file his federal petition and why he could not have obtained these documents before the limitation period expired.

"[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999). "*[P]ro se* litigants,

---

[4] The Court takes judicial notice of the filing in state court because Perez quotes the letter in his reply to the supplemental response. (Doc. 46 at 8–9) Correspondence, *State v. Perez*, No. 11-CF-3662 (Fla. 10th Jud. Cir. Jan. 4, 2016).

like all others, are deemed to know of the one-year statute of limitations." *Outler v. United States*, 485 F.3d 1273, 1282 n.4 (11th Cir. 2007). Consequently, Perez's lack of legal knowledge is not an extraordinary circumstance that justifies equitable tolling. *Rivers v. United States*, 416 F.3d 1319, 1323 (11th Cir. 2005) ("[W]hile Rivers's lack of education may have delayed his efforts to vacate his state conviction, [ ] 'procedural ignorance [has never been accepted] as an excuse for prolonged inattention when a statute's clear policy calls for promptness.'") (quoting *Johnson v. United States*, 544 U.S. 295, 311 (2005)).

In his initial federal petition filed in 2017, Perez stated that he had "a broken hand for three-and-a-half years [that] never [was] fixed." (Doc. 1 at 9) Despite his broken hand, his hearing loss, and his age, Perez capably drafted and filed numerous *pro se* petitions, complaints, and motions between 2014 and 2017. Perez filed a two-page handwritten habeas petition in *Perez v. Sec'y, Dep't Corrs.*, No. 8:14-cv-594-MSS-EAJ (M.D. Fla.) on March 5, 2014, a four-page handwritten and typed state habeas petition on March 21, 2014 (Doc. 44-2 at 452–55), a four-page handwritten and typed state mandamus petition on March 24, 2014 (Doc. 44-2 at 447–49), a two-page handwritten state habeas petition on March 28, 2014 (Doc. 44-2 at 445–46), a fifteen-page handwritten habeas petition in *Perez v. Sec'y, Dep't Corrs.*, No. 8:14-cv-833-JDW-TBM (M.D. Fla.) on April 7, 2014, a fifteen-page handwritten habeas petition in *Perez v. Sec'y, Dep't Corrs.*, No. 8:14-cv-1073-SDM-AEP (M.D. Fla.) on May 4, 2014, a twenty-nine-page typed petition alleging ineffective assistance of appellate counsel on October 29, 2015 (Doc. 36-2 at 654–82), and the nine-page handwritten initial federal petition in this case on February 6, 2017. (Doc. 1)

Because Perez drafted and filed these documents after 2013 when he broke his hand, Perez fails to demonstrate that his broken hand, coupled with his age and hearing loss, "stood

in his way and prevented [the] timely filing" of his federal petition. *Holland*, 560 U.S. at 649 (internal quotations omitted). *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) ("As for the 'extraordinary circumstance' prong [ ], we [ ] have required a defendant to show a causal connection between the alleged extraordinary circumstances and the late filing of the petition.").

**Prior Ruling and Waiver**

Perez contends that an earlier order granting an extension of time determined that his petition was timely, that the Respondent failed to assert the time bar defense in its initial response to the petition, that the Respondent did not raise the time bar defense until four years after Perez filed the initial motion, and that the Respondent did not object or oppose Perez's motion to stay the action. (Doc. 46 at 10–11) He asserts that these circumstances support the conclusion that his petition is timely.

After Perez filed his initial petition, the Respondent moved to strike the petition because the petition was "confusing, illegible in various places, and fail[ed] to make sense as a whole." (Doc. 9 at 5) The Court determined that the initial petition was facially deficient, that the claims appeared unexhausted, that judicially noticed dockets from state court appeared to show that time remained on the limitation period to permit exhaustion, and that appointment of counsel was appropriate (Doc. 11 at 4–5) (record citations omitted):

> A review of the online dockets for the Second District Court of Appeal and the Circuit Court for Polk County, Florida, show that Perez may have several months remaining of the one-year limitation. If he wishes to preserve his right to federal review of any unexhausted claim, Perez must present the claim (in particular a claim of ineffective assistance of counsel) to the state courts in a Rule 3.850 motion for post-conviction relief without delay because a federal petition does not toll the limitation. *Duncan v. Walker*, 533 U.S. 167 (2001)

(holding that the one-year limitation is not tolled during the pendency of a Section 2254 application).

. . .

*Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), explains that no constitutionally protected right to counsel exists beyond direct appeal. However, 18 U.S.C. § 3006A(a)(2)(B) authorizes appointing counsel in an action under Section 2254 when "the court determines that the interests of justice requires." As outlined above, Perez has persisted in his attempts to obtain federal review of his state conviction and sentence. The Respondent correctly characterizes portions of the petition as "simply not legible." On a page attached to his petition Perez represents that he is "seventy-two years old," has a "broken hand [that has] never been fixed," and has had difficulties in using the institutional library. Under these unique circumstances, the Court determines that this action warrants the appointment of counsel. Because Perez's federal one-year limitation has not expired and because reliance on the unartfully drafted petition may preclude a timeliness based on the "relation-back theory," counsel must quickly file an amended petition to preserve Perez's entitlement to a review of his grounds for relief and Perez must quickly file a motion in state court that tolls the federal limitation.

Accordingly, [t]his action is referred to the Magistrate Judge to appoint counsel under 18 U.S.C. § 3006A(a)(2)(B). Because Perez's federal one-year limitation has not expired, counsel must timely file an amended petition. Counsel must file either an amended petition or a status report within thirty days.[5]

---

[5] The earlier order determined that Perez's age, broken hand, and limited access to the law library justified appointment of counsel. This Order determines that those circumstances do not justify equitable tolling. The burden for appointment of counsel under 18 U.S.C. § 3006A(a)(2)(B) substantially differs from the burden for equitable tolling. Section 3006A(a)(2)(B) authorizes a district court to appoint counsel if "the interests of justice so require." In contrast, "[e]quitable tolling is limited to rare and exceptional circumstances, such as when the State's conduct prevents the petitioner from timely filing." *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005).

Case 8:17-cv-00311-MSS-UAM   Document 48   Filed 04/26/24   Page 11 of 24 PageID 1873

Appointed counsel filed an unopposed motion for extension of time to file an amended petition and a motion to stay the action to exhaust Perez's remedies in state court. (Docs. 15 and 18) The Court directed the Respondent to clarify whether the Respondent waived the time bar defense by stipulating to the extension of time. (Doc. 16 at 2) The Respondent responded: "[T]o clarify, [the] Respondent **does not waive** any future assertion of a timeliness defense in the instant case." (Doc. 17 at 2) (bolding in original) The Court granted both motions and stayed and administratively closed the case until appointed counsel moved to re-open the action. (Doc. 19) Over three years later, appointed counsel moved to re-open the action and filed an amended petition. (Docs. 27 and 32)

Because the claims in Perez's amended petition relate back to claims in his initial petition, the three-year delay did not prejudice Perez. *Mayle v. Felix*, 545 U.S. 644, 655 (2005) ("Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence.'") (quoting Fed. R. Civ. P. 15(c)(2)).

A district court may reconsider a non-final order at any time before a final judgment enters. Fed. R. Civ. P. 54(b). *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805–06 (11th Cir. 1993). The Respondent had not filed the relevant state court record when the Court determined in the earlier order that "Perez's federal one-year limitation has not expired." (Doc. 11 at 5) With the benefit of the relevant state court record and argument by both parties concerning the timeliness of the petition, the Court reconsiders its prior preliminary ruling and determines that the petition is untimely.

Even though the Respondent did not initially move to dismiss Perez's petition as untimely and instead moved to dismiss the petition as facially deficient, the Respondent did

not waive the time bar defense. When the Respondent did not oppose Perez's motion for extension of time to file an amended petition, the Respondent clarified that it did not "waive any future assertion of a timeliness defense." (Doc. 17 at 2) Also, after Perez filed an amended petition, the Respondent was entitled to file a new response to the new pleading and assert the time bar defense. *Sweet v. Sec'y, Dep't Corrs.*, 467 F.3d 1311, 1321 (11th Cir. 2006). Consequently, neither the prior ruling nor the Respondent's initial response supports the conclusion that his petition is timely.

**Actual Innocence**

Lastly, Perez asserts that actual innocence excuses the time bar. (Doc. 39 at 3–4) "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass . . . [the] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Perez fails to support his claim of actual innocence with new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324. Because he instead re-argues the sufficiency of the evidence at trial, his actual innocence claim fails. *Bousley v. United States*, 523 U.S. 614, 623 (1998) ("It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency.").

Even so, the evidence at trial proved Perez's guilt. During a recorded interrogation, Perez stated that he was a certified massage therapist and treated the victim, who suffered from a skin condition called vitiligo, with massage therapy. (Doc. 36-2 at 270–85) Perez admitted that he inserted his finger into the vagina and the anus of the victim, who was fourteen (Doc. 36-2 at 285–88):

| [Detective #1:] | So this [fourteen]-year-old girl is on your table, she is getting a massage, and you stuck your — which finger, your pinky you said? |
|---|---|
| [Perez:] | Yeah. |
| [Detective #1:] | You stuck your pinky into her vagina? |
| [Perez:] | Yeah, and I open[ed it] first. |
| [Detective #1:] | And you opened it. |
| [Perez:] | I opened [it] first with my hands so she [doesn't] have pain. |
| [Detective #1:] | Okay. |
| [Perez:] | And I put — |
| [Detective #1:] | Are you a gynecologist? |
| [Perez:] | No. |
| [Detective #1:] | All right. And then you said something about massaging the anus with your fingers. |
| [Perez:] | Yeah, that's the same thing for the — okay. What she has — |
| [Detective #1:] | Hold on. Hold on, hold on, hold on. |
| [Perez:] | Let me tell you what she has. |
| [Detective #1:] | Hold on. Hold on just a minute. |

13

[Perez:]                 When I was doing that massage —

[Detective #1:]          Let me clear something — let me clear
                         something up. So you stuck your finger in
                         her rectum?

[Perez:]                 Yeah.

[Detective #1:]          And you did it to massage what?

[Perez:]                 Just on the edge.

[Detective #1:]          Just on the edge. What's the edge?

[Perez:]                 Like this, this is the anus, you go like this.

[Detective #2:]          To do what?

[Perez:]                 And then you go to the other side like this
                         and then you press outside like this and
                         then you go like this to move the
                         piriformis, number one —

[Detective #2:]          Uh-huh.

[Perez:]                 — on her which is like bend — like this.

[Detective #2:]          What's that? I'm not —

[Perez:]                 Okay. You have maximus, medium and
                         minimus rectus, that's the outside of your
                         butt, the biggest muscle in your buttocks.
                         Inside this is from your hip. This is your
                         hip, from your hip to the anus and close to
                         the — well, not the anus — the — the wall
                         next to it, the bone next to [it] which is the
                         pelvis goes a ligament on the way to the
                         anus. On the anus you see the ligament
                         and you see the piriformis.

[Detective #1:]          So you stick a finger in her butt to get to
                         that ligament?

[Perez:]                 Yeah, you have to. It is the only way.

| | |
|---|---|
| [Detective #1:] | You stuck your finger in there. Is that what you did? |
| [Perez:] | Yeah, because you could not — |
| [Detective #1:] | On this [fourteen]-year-old girl? |
| [Perez:] | This is the butt. You see this? |
| [Detective #1:] | Okay. |
| [Perez:] | Okay. The only way to get to the piriformis is going like this. |
| [Detective #1:] | Uh-huh. |
| [Perez:] | Because the piriformis is going like this. |
| [Detective #1:] | Uh-huh. But you're not a doctor? |
| [Perez:] | Huh? |
| [Detective #1:] | But you're not a doctor? |
| [Perez:] | No. |
| [Detective #1:] | You're not a gynecologist? |
| [Perez:] | No, I'm not a gynecologist and I'm not a doctor. |
| [Detective #1:] | Are you a [doctor who performs a colonoscopy]? |
| [Perez:] | A what — no. No. |

Perez admitted that he inserted a vibrator into the victim's anus (Doc. 36-2 at 302–04):

| | |
|---|---|
| [Detective #2:] | Did you use — did you use any of those toys with [the victim] to assist? |
| [Perez:] | I did, one. |
| [Detective #2:] | Which [one] was that? |

[Perez:]            To move, because I don't want to use a vibrator like this. I don't want to use my fingers.

[Detective #2:]     Right.

[Perez:]            I want to go deep on the side for the inside, inside the other side. In other words, I do like this, I open it like this and I go this way once, I go this way once.

[Detective #1:]     So you were massaging her inner and outer labia?

[Perez:]            Like this.

[Detective #1:]     The muscle?

[Perez:]            This is how the finger [—]

[Detective #1:]     Okay. You use the tool to massage, okay. So, you use a vibrator.

[Perez:]            The massage, yeah.

[Detective #1:]     So, you use a hand-held massager to penetrate and massage the inside of a [fourteen]-year-old girl.

[Detective #2:]     Was it her vagina or her anus?

[Perez:]            No. Keep in mind I asked her.

[Detective #1:]     Okay.

[Perez:]            Can I make this massage bigger?

[Detective #1:]     Uh-huh.

[Perez:]            It is going to be bigger, because I have — benzocaine for babies teething and also for [anesthetic], so that's going to make you wider, your ass and I work on that piriformis.

[Detective #2:]      So, you put the lubricant you brought — the lubricant on her to use the —

[Perez:]      Yeah, to — to make the penetration that time.

[Detective #2:]      So the vibrator would fit?

[Perez:]      But not inside all of it, just enough to go like this.

[Detective #1:]      Just enough to penetrate the rectum?

[Perez:]      On this.

[Detective #1:]      Okay. Just enough to penetrate the rectum?

[Perez:]      Yeah, yeah.

[Detective #1:]      Okay.

[Perez:]      I'm talking like this much penetration.

[Detective #1:]      Like about two inches?

[Perez:]      No, maybe an inch and a half to two inches.

[Detective #1:]      Okay. An inch and a half to two inches to penetrate. . . .

Also, Perez admitted that his actions were wrong (Doc. 36-2 at 321–23):

[Detective #1:]      No, I'm asking the question, yes or no?

[Perez:]      Yes, I did everything that you [are] saying.

[Detective #1:]      Okay.

[Perez:]      Yes.

[Detective #1:]      Okay.

[Perez:]      Yeah. Yeah, but it was more wrong the way they approached me.

[Detective #1:]    Okay. Wait, wait. Hold on. You knew that was still wrong. And you knew that maybe there was something going on, something inside told you that this was wrong?

[Perez:]    Yeah.

[Detective #1:]    But you still did it?

[Perez:]    Yes, I did.

[Detective #1:]    You still did it, right?

[Perez:]    Yeah, I did it. But I thought it was more —

[Detective #1:]    To a [fourteen]-year-old girl?

[Perez:]    But I thought it was more —

[Detective #1:]    To a [fourteen]-year-old girl.

[Perez:]    At least I didn't abuse her or something, you know.

[Detective #1:]    You didn't abuse her?

[Perez:]    Right, not —

[Detective #1:]    You stuck your finger in her body.

[Perez:]    Before I explain to her what I [am] going to do.

[Detective #1:]    You stuck your finger in a [fourteen]-year-old's body?

[Perez:]    Yeah.

[Detective #1:]    You did that, right?

[Perez:]    Yes, it's wrong.

[Detective #1:]    It's wrong and you knew that?

| | |
|---|---|
| [Perez:] | Yes and no. |
| [Detective #1:] | Okay. Because you were pushing the limits of your profession, right? |
| [Perez:] | Yes, I did. In that case if you want to put it that way, yes. |
| [Detective #1:] | Okay. All right. |
| [Perez:] | It's against my profession. |
| [Detective #1:] | I don't know to put it that way. |
| [Perez:] | It's against my profession. |
| [Detective #1:] | That's what — that's what you said? |
| [Perez:] | It's against my profession to do that. |
| [Detective #1:] | It's against your profession but you did it anyway? |
| [Perez:] | You say that and it is true. |
| [Detective #1:] | But you did it. |
| [Perez:] | Because [ ] I thought [it] will do good for her. |

Perez asserts that he is actually innocent because the evidence fails to prove that he acted with lewd and lascivious intent. (Doc. 39 at 4) The jury found Perez guilty of four counts of lewd and lascivious battery and one count of lewd and lascivious molestation. (Doc. 36-2 at 3–4, 597) The information alleged that Perez committed a lewd and lascivious battery by engaging in sexual activity with the victim. (Doc. 36-2 at 2–3) "Lewd or lascivious battery, unlike lewd or lascivious molestation, does not require a lewd or lascivious intent." *Patel v. State*, 163 So. 3d 737, 739 (Fla. 5th DCA 2015). *See also* Fla. Std. Jury Instr. (Crim.) 11.10(a) (2011) ("To prove the crime of lewd or lascivious battery, the State must prove the

following two elements beyond a reasonable doubt: (1) (Victim) was twelve years of age or older, but under the age of sixteen years. (2) (Defendant) (b) [committed an act upon (victim) in which the [anus] [vagina] of (victim) was penetrated by an object.]"). Consequently, Perez's claim of actual innocence based on a lack of evidence of lewd and lascivious intent for those counts fails.

In Count Five, the information alleged that Perez committed a lewd and lascivious molestation by "intentionally touch[ing] in a lewd and lascivious manner the breasts, genitals, genital area, buttocks, or clothing covering them of [the victim]." (Doc. 36-2 at 3) *See* § 800.04(5)(a), Fla. Stat. (2011) ("A person who intentionally touches in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering them, of a person less than sixteen years of age, or forces or entices a person under sixteen years of age to so touch the perpetrator, commits lewd or lascivious molestation.").

"[W]hen conduct occurs as described in the statute, the question of whether the acts were committed lewdly or lasciviously is one of fact." *Rosen v. State*, 940 So. 2d 1155, 1160 (Fla. 5th DCA 2006). "Though not precisely defined, 'lewd' and 'lascivious' conduct generally denotes 'the unlawful indulgence of lust,' 'gross indecency with respect to the sexual relations,' or 'wicked, lustful, unchaste, licentious, or sensual' conduct." *Rosen*, 940 So. 2d at 1160 (quoting *Chesebrough v. State*, 255 So. 2d 675, 677 (Fla. 1971)). "Lewdness must be determined on a case-by-case basis and may be imputed from the circumstances." *Rosen*, 940 So. 2d at 1160.

During closing, the prosecutor argued that Perez committed lewd and lascivious molestation by touching the victim's breasts (Doc. 36-2 at 561–62):

> [Prosecutor:]    Now, Count Five is a lewd molestation.
> And in Count Five, the state alleged, as

you recall [the victim's] testimony, again, between the ages of twelve and sixteen, she was [fourteen], right in the middle of that, he turned her over that first day and was doing a full massage on the front of her.

And she told you that [he] started to massage her breasts. The mother said, don't take your bra or panties off, and the defendant told her, nope, the bra has to come off, you can leave your panties on. But what he didn't say is for now because later he removed them, so that he could insert his thumb in her anus as he told you.

He massaged her breasts, and she says why are you doing that? He says to look for bumps. Now, later on he's asked, so are you a gynecologist, no, not a gynecologist. No, are you an obstetrician. No, I'm more than a gynecologist is what he tells the mom, more than a gynecologist. And he would have you believe from his statement to law enforcement he has been a midwife since he was three or four years old when his grandmother trained him. And then today he told you at the age of four his grandmother taught him the art of massage.

Now, I don't know, but the state submits to you that that's somewhat unbelievable that somebody would learn those things at that age. That's for you to decide.

The second element that the state has to prove on the lewd molestation is the defendant in a lewd or lascivious manner intentionally touched the breasts, genitals, genital area, buttocks, clothing covering the breasts or the genitals or genital area of the victim. He would have you believe he was looking for bumps or lumps, that's what he told her. On the stand, he told you

> he was lifting the breasts, he was looking [for] vitiligo.
>
> You heard the victim, there was no vitiligo there. There was none on her genital area. There was none on her buttocks. It was on her elbows, around her eyes and her knees. That's where she had vitiligo. She knows, it is her body, she sees it every day. But he would have you believe that he just touched the breasts to be able to do that.
>
> There is no other purpose but a lewd purpose for a massage therapist to tell a [fourteen]-year-old child you have to take your bra off, sorry, and oh, by the way, I need to massage up there. . . .

The victim testified that Perez massaged her breasts even though she did not suffer from vitiligo on her breasts (Doc. 36-2 at 134):

> [Prosecutor:]   What happened after he massaged and penetrated your anus?
>
> [Victim:]   He told me to turn over and then he started massaging my breasts. And he put this weird cup thing on my nipple and he was explaining something like if it was leaking it was bad, but it didn't so it was good. And it was really weird.
>
> [Prosecutor:]   Okay. So he massages your breast. Did you have vitiligo on your breasts?
>
> [Victim:]   No.
>
> [Prosecutor:]   Did he tell you that this would help? Why — did you ask him why he was doing that?
>
> [Victim:]   It's like when you're there, you don't really question it, you just think because he has all of these doctor documents and stuff, it just seems like he knows what he is doing, I'm sure.

[Prosecutor:]        Does he tell you why he was massaging your breasts?

[Victim:]        I don't remember.

[Prosecutor:]        Was he looking for lumps, bumps, or anything like that, that you recall?

[Victim:]        I don't know.

[Prosecutor:]        You don't remember. But he massaged your breasts with his hands?

[Victim:]        Yes, ma'am.

Perez testified that he examined the victim's breasts for vitiligo (Doc. 36-2 at 494–95):

[Prosecutor:]        Sir, then you heard —

[Perez:]        There's a big difference.

[Prosecutor:]        — you heard the victim say that you got up here and you massaged her entire body that first day, correct?

[Perez:]        That's where all this hearsay come[s] from.

[Prosecutor:]        And you said that she said that you also massaged her breasts looking for lumps, correct?

[Perez:]        No, that's not the way it is.

[Prosecutor:]        Okay.

[Perez:]        I look for the spots of vitiligo underneath the breasts.

Because a reasonable juror could infer from the evidence, including Perez's penetration of the victim's vagina with his finger and Perez's penetration of the victim's anus with his finger and a vibrator, that Perez massaged the victim's breasts with a lewd

23

and lascivious intent, his claim of actual innocence fails. *Kuenzel v. Comm'r, Ala. Dep't Corrs.*, 690 F.3d 1311, 1318 (11th Cir. 2012) ("Because some reasonable jurors — weighing what was available at trial and what has since been presented — would still find Petitioner guilty, Petitioner has not met the '*Schlup* gateway' standard."). *Lara-Castillo v. State*, 244 So. 3d 354, 355–36 (Fla. 1st DCA 2018) ("The problem with Lara–Castillo's argument is that intent is almost always established through circumstantial, rather than direct, evidence. And while no witness testified that Lara–Castillo touched the child for 'sexual indulgence' or with 'sensual intent,' jurors could have found he did, based on the evidence . . . .") (citations omitted).

Because Perez fails to demonstrate that no reasonable juror would have convicted him in light of new reliable evidence, actual innocence does not excuse the time bar. Accordingly, Perez's amended petition (Doc. 32) is **DISMISSED** as time barred. The Clerk is **DIRECTED** to enter a judgment against Perez and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND
### LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Perez neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on April 26, 2024.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE